ACCEPTED
15-24-00013-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/23/2025 12:36 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-24-00013-CV

**IN THE COURT OF APPEALS**

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/23/2025 12:36:31 PM
CHRISTOPHER A. PRINE
Clerk

**FOR THE FIFTEENTH JUDICIAL DISTRICT**

**CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY
AS EXECUTIVE COMMISSIONER OF HHSC, ET. AL,**
    **Appellants/Defendants**

**vs.**

**DALLAS COUNTY, TEXAS AND MARIAN BROWN, IN HER OFFICIAL
CAPACITY AS DALLAS COUNTY SHERIFF,**
    **Appellees/Plaintiffs**

**On Appeal from the 353rd Judicial District Court
Travis County, Texas**

**BRIEF OF AMICUS CURIAE TEXAS ASSOCIATION OF COUNTIES**

    **Respectfully submitted,**

    **JACKSON & CARTER, PLLC**
    **6514 McNeil Drive, Bldg. 2, Suite 200**
    **Austin, TX 78729**
    **(512) 473-2002 Telephone**
    **(512) 473-2034 Facsimile**

    **By: /s/ A. Craig Carter**
    **A. Craig Carter**
    **State Bar No. 03908100**
    ccarter@jackson-carter.com
    **COUNSEL FOR AMICUS CURIAE**
    **TEXAS ASSOCIATION OF COUNTIES**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................2

TABLE OF AUTHORITIES .........................................................................3

INTEREST OF AMICUS CURIAE .......................................................... 6

SUMMARY OF THE ARGUMENT……………………………………....7

ARGUMENT AND AUTHORITIES…………………………………….....9

I. THE TRIAL COURT PROPERLY DENIED HHSC'S PLEA TO THE JURISDICTION…………………………………………………......9
   A. Case Background…………………………………………………9
   B. County Jails and State Hospitals……………………………………9
   C. Absent discretion granted by the legislature, actions in violation of statute are ultra vires………………………………………………………11
II. COUNTY JAILS ARE NOT INTENDED TO BE, AND ARE NOT WELL EQUIPPED TO SERVE AS, DE FACTO MENTAL HEALTH FACILITIES………………………………………………….……17
III. TEXAS COUNTIES SHOULD BE ALLOWED TO MAINTAIN CONTROL OVER THEIR LOCAL FACILITIES………………………..20

CONCLUSION AND PRAYER ..............................................................221

CERTIFICATE OF COMPLIANCE…………………………………....22

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Chambers-Liberty Co. Nav. Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019….….15

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)………………………12

*Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154 (Tex. 2016)…………………………………………………………………...12

*O'Connor v. Davidson*, 422 U.S. 563 (1975)…………………………………...11

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)…………15

*Tex. Dep't of Prot. and Reg. Svs. v. Mega Child Care, Inc.*, 145 S.W.3d 170 (Tex. 2004)………………………………………..…………………………..16

**TEX. CONSTITUTION, STATUTES AND REGULATIONS**

TEX. CONST. art. V, § 18……………………………………………………..21

TEX. CODE CRIM. PROC. Art. 46B.0021…………………….….……...12

TEX. CODE CRIM. PROC. Art. 46C.0011……………………………………12

TEX. CODE CRIM. PROC. Art. 46B.106(1)…………………….…………12

TEX. CODE CRIM. PROC. Art. 46C.251……………………...……………..12

TEX. GOV'T CODE, Section 511.021…………………………………….…9

TEX. LOCAL GOV'T CODE, Ch. 351…………………………..……18

TEX. LOCAL GOV'T CODE, Section 351.001……………………………18

TEX. LOCAL GOV'T CODE, Section 351.014……………………...…..18

TEX. LOCAL GOV'T CODE, Section 351.041……………………………...8

TEX. LOCAL GOV'T CODE, Section 351.034……………………………10

TEX. GOV'T CODE, Section 511.021……………………………………………...10

37 TEX. ADMIN CODE Section 275.2……………………………….……10

37 TEX. ADMIN CODE, Ch. 297…………………………………………...10

**OTHER**

AP Investigation: Many Jails Fail to Stop Inmate Suicides………………………19

HHSC Presentation to the Senate Finance Committee – Mental Health in Texas, 2/18/25…………………………………………………………………………10

J, Hirschauer "The Last Institutions", City Journal Dec. 27, 2022………………11

Jaffe, DJ "Insane Consequences, How the Mental Health Industry Fails the Mentally, Ill (2017)(general discussion of impact of litigation on treatment for toughest cases of mental illness)…………………………………………………11

KERA News: "He lingered for months in jail. Long waits for Texas mental health beds mean he's not alone"…………………………………………………...18

Mental Health Letter from Dallas County Commissioners Court, cited in KERA article, "Dallas County sues Texas over wait times for mentally ill inmates;" https://www.keranews.org/criminal-justice/2023-03-24/dallas-county-mental-health-beds-lawsuit...........................................................................20

Mortality in Local Jails 2000-2019 – Statistical Tables, Bureau of Justice Statistics, December 2021, NCJ 301368…………………………………………..19

Reuters Investigates: Dying Inside…………………………………………..19

Roberts, J, "Reform and Retribution", An Illustrated History of American Prisons p. 1, 21-22……………………………………………………………………10

Shayeb, M  "Psychiatric Treatment in Nineteenth Century Texas" Medical Humanities.Rice.Edu/psychiatry (2018)…………………………………………..11

Stuckey, A "In Crises, Part 2: Funding Cuts so deep they kill", Houston Chronicle, updated March 9, 2022…………………………………………………11

Texas Commission on Jail Standards 2022 and 2023 Annual Report……….…18

Texas Tribune: "Workforce shortages in the state psychiatric hospital system prolong jail time for mentally ill Texans"…………………………………….…18

The Behavioral Health System- DSHS Presentation to the House Select Committee; February 18, 2016……………………………………………11

Tiny Texas Jails – Dallas County; https://www.tinytexasjails.com/vanished/dallas-county . …………………………………………………….....9

TSHA Handbook Online: Austin State Hospital; Terrel State Hospital; San Antonio State Hospital…………………………………………...10-11

## IN THE COURT OF APPEALS
## FOR THE FIFTEENTH JUDICIAL DISTRICT

**CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF HHSC, ET. AL,**
**Appellants/Defendants**

**vs.**

**DALLAS COUNTY, TEXAS AND MARIAN BROWN, IN HER OFFICIAL CAPACITY AS DALLAS COUNTY SHERIFF,**
**Appellees/Plaintiffs**

**On Appeal from the 353rd Judicial District Court**
**Travis County, Texas**

**TO THE HONORABLE JUSTICES OF THE FIFTEENTH COURT OF APPEALS OF TEXAS:**

The Texas Association of Counties, as Amicus Curiae, respectfully submits this Brief of Amicus Curiae, pursuant to Rule 11 of the Texas Rules of Appellate Procedure, and urges this Court to uphold the trial court's denial of Defendant/Appellant's Plea to the Jurisdiction.

## INTEREST OF AMICUS CURIAE

The purpose of the Texas Association of Counties ("TAC") is to coordinate and augment the efforts of county officials to provide a responsive form of government to the people of Texas; to further the interest of local government for the people of Texas; and, to assist the people and the counties in accomplishing their

goals toward meeting the challenge of modern society.

TAC is filing this brief because it believes the questions raised in this suit are important to counties and are having a significant impact on county finances and budgets as well as on county employees. TAC has compensated the law firm of Jackson & Carter, PLLC, for the preparation of this brief.

## SUMMARY OF THE ARGUMENT

For purposes of this Brief, The Texas Association of Counties adopts the Statement of Facts contained in the Brief of Appellees. The pleadings and evidence submitted by Appellees (referred to herein as "Dallas County") regarding the numbers and length of time forensic patients are remaining in the county jail and not being transferred to state facilities are sufficient to assert viable claims of ultra vires and unconstitutional actions on the part of Appellants (referred to herein as "HHSC") at the pleadings stage. Sovereign immunity does not bar an ultra vires suit against a state official for an exercise of limited discretion in violation of the law. HHSC does not dispute that it is required to designate/operate state facilities for the purpose of accepting forensic commitment patients and it does not take the position that it is legally allowed to unilaterally transfer its obligations to the counties. HHSC cannot legally allow forensic commitment patients to remain in county jails indefinitely. Thus, HHSC does not have unlimited discretion regarding the acceptance of forensic commitment patients and this suit should not be dismissed at the pleadings stage

7

based on sovereign immunity.

The discussion in HHSC's principal brief regarding recent efforts made to shorten the forensic commitment patient waitlist does not weigh in favor of the plea to the jurisdiction being granted and, at best, only shows that a fact issue exists. Legislative acceptance, or acquiescence, is not applicable to the case at hand because there has been no construction of the applicable statutes by the Texas Supreme Court or an administrative agency, and there has not then been a re-enactment of the applicable statutes without substantial change. HHSC's failure to timely accept forensic commitment patients into state hospitals is forcing county jails to serve as de facto mental health facilities, which may put patients and county staff at risk. HHSC's failure to timely accept forensic commitment patients into state hospitals is usurping the control of locally elected county officials over local facilities which are supported by ad valorem taxed paid by local county residents.

<u>**Argument and Authorities**</u>

I.     <u>**The Trial Court Properly Denied HHSC's Plea to the Jurisdiction**</u>

        A.     <u>**Case Background**</u>

This case is about the mandatory duty assigned to HHSC by the state political branches to provide care for those jail detainees found to be incompetent to stand trial, or not guilty by reason of insanity. HHSC has failed in its duty to timely house such forensic patients, thus leaving the costs of housing and caring for these detainees on the county tax-payers dime despite statutory directives that they should be cared for by the state. It has become an unfunded mandate.

As Dallas County points out in its Brief, the failure of the state to honor its duties to forensic patients in county jails creates a horizontal separation of powers issue this court must address. Furthermore, because there is no discretion provided to the state agency by the statute, the actions are ultra-vires. Some historical background highlights the issue.

        B.     <u>**County Jails and State Hospitals**</u>

Texas county jails are a necessary community cost to provide public safety expressly provided for by the legislature in statute. Tex. Local Gov. Code Section 351.041. The first jail in Dallas County was established in 1850.[1] Jails like the one

---

[1] https://www.tinytexasjails.com/vanished/dallas-county (quoting p. 93, Blackburn, Ed "Wanted: Historic County Jails of Texas," (2006).

9

established in 1850 in Dallas have been used and are still used to house detainees while they await trial, punishment or release. The administration of such jails is a duty given to the locally elected County Sheriff. Tex. Local Gov. Code Section 351.034. Much of how we have used jails in this country was inherited from Western Europe.[2] Of course, that inheritance is amplified by our Constitution, Court Cases and laws of the State of Texas. For example, jailers are required to be licensed by the state. 37 Tex. Administrative Code Section 275.2. Jails are required to undergo both scheduled and random inspections by the Texas Commission on Jail Standards which are done with the power to impose penalties. 37 Tex. Administrative Code, Chap. 297. If tragedy strikes and a detainee dies in jail custody, the jail will be investigated by the Texas Rangers, or another law enforcement agency that doesn't operate the facility. Tex. Gov. Code Section 511.021.

According to the handbook of the Texas State History Association, the first Texas State Hospital to care for the mentally ill, now known as Austin State Hospital, was established by the legislature in 1856.[3] Terrel State Hospital was created in 1885, followed by San Antonio State Hospital in 1889.[4] There are nine State Hospitals in Texas today.[5]

---

[2] Roberts, J, "Reform and Retribution", An Illustrated History of American Prisons p. 1, 21-22.
[3] https://www.tshaonline.org/handbook/entries/austin-state-hospital
[4] https://www.tshaonline.org/handbook/entries/terrell-state-hospital;
https://www.tshaonline.org/handbook/entries/san-antonio-state-hospital
[5] HHSC Presentation to the Senate Finance Committee – Mental Health in Texas, 2/18/25.

In "a reflection of the movement to reduce the number of patients institutionalized in psychiatric hospitals in the United States", the number of patients admitted to State Hospitals in Texas began to decline in the decades after 1970.[6] For example, Terrell State Hospital housed 1,652 patients in 1976, 715 in 1986 and 525 in 1988.[7] The same is true at other state hospitals. In addition, between 1994 and 2015 state-funded Psychiatric Bed Capacity dropped.[8] While admittance was shrinking, the demand for forensic beds was not.[9] This trend of reduction in mental health beds forms part of the reason for today's ongoing crisis.

### C. Absent discretion granted by the legislature, actions in violation of statute are ultra vires.

Dallas County's allegations and the evidence submitted at the trial court level are sufficient to assert viable claims of ultra vires and unconstitutional actions on the part of HHSC at the pleadings stage. An ultra vires claim against a government official may be established by showing that the official "acted without legal authority

---

[6] https://www.tshaonline.org/handbook/entries/terrell-state-hospital. See also Shayeb, M "Psychiatric Treatment in Nineteenth Century Texas" Medical Humanities.Rice.Edu/psychiatry (2018) (Overview of psychiatric care in north Texas in the 19th Century); Stuckey, A "In Crises, Part 2: Funding Cuts so deep they kill", Houston Chronicle, updated March 9, 2022 ("Since the 1950's, the number of state-run hospital beds has decreased by 95 per cent. Outpatient treatment hasn't filled the gap."); *O'Connor v. Davidson*, 422 U.S. 563 (1975); Jaffe, DJ "Insane Consequences, How the Mental Health Industry Fails the Mentally, Ill (2017)(general discussion of impact of litigation on treatment for toughest cases of mental illness); J, Hirschauer "The Last Institutions", City Journal Dec. 27, 2022 (discussion of lives of patients when facilities close).

[7] Id.

[8] The Behavioral Health System- DSHS Presentation to the House Select Committee; February 18, 2016.

[9] https://www.tshaonline.org/handbook/entries/terrell-state-hospital.

or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). While sovereign immunity bars suits complaining of an exercise of absolute discretion, it does not bar suits complaining of "an officer's exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act. Only when such absolute discretion—free decision-making without any constraints—is granted are ultra vires suits absolutely barred." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016). Granting absolute protection in instances where an official is exercising only limited discretion "would go against the rationale for governmental immunity in the first place." *Id*.

HHSC is not disputing that it has an obligation to accept forensic commitment patients into State facilities. Nor could they, as pertinent statutes require HHSC to designate facilities which are either operated by HHSC or under contract with HHSC for the purpose of accepting forensic commitment patients. See TEX. CODE CRIM. PROC. Art. 46B.0021 and Art. 46C.0011. In certain circumstances, forensic commitment patients are required to be placed in these HHSC designated facilities. See TEX. CODE CRIM. PROC. Arts. 46B.106(1) and 46C.251. Both parties agree that it is HHSC's statutory obligation to maintain state facilities and to accept forensic commitment patients into these facilities. Further, HHSC does not appear to be taking the position that it is allowed by law to forego this obligation and instead

12

to shift its statutory obligation to house and provide treatment to forensic commitment patients to the counties. As such, HHSC does not have absolute discretion under the law regarding the acceptance of forensic commitment patients. Thus, the issue for the trial court to decide is whether, as Dallas County asserts, HHSC's excessive delays in accepting forensic commitment patients is, in effect, a transfer of HHSC's legal obligations and accompanying cost to the counties which is an ultra vires violation of its statutory obligations and a constitutional violation.

HHSC, relying on what it claims is a lack of clarity in the statutes, argues that it has immunity in this instance and that courts have no authority to review this matter, regardless of the length of wait time and regardless of how many forensic commitment patients are being housed and treated by Dallas County, as well as other counties around the state. However, HHSC's argument begs this question: At what point does the extent and length of the waitlist amount to HHSC shifting its responsibilities to the counties, thus violating the law and becoming ultra vires and unconstitutional? HHSC is asking this Court to throw the case out before the above question can ever be considered. Following HHSC's arguments to their logical extension, HHSC could adopt a practice of simply allowing forensic commitment patients to stay in county jails indefinitely, for the rest of their lives or until they can be discharged, and courts would be without jurisdiction and powerless to decide whether the HHSC Commissioner's actions are, or are not, in compliance with the

requirements of the law.

In other words, HHSC is essentially claiming that it has unlimited discretion to wait an indefinite amount of time to accept forensic commitment patients into state facilities. However, the various applicable statutes and constitutional provisions, some of which are cited herein and others in Dallas' County's briefing, do not support such a position. Dallas County has made factual allegations and presented evidence to the trial court regarding the excessive number of forensic commitment patients that are required to remain in Dallas County custody, the excessive amount of time such patients remain in the custody of the County, and the associated costs to the County. This is all due to HHSC's failure to accept such patients into state facilities within a reasonable amount of time as required by the laws our legislature has passed. Based on such allegations and evidence, Dallas County has sufficiently stated claims that HHSC has either acted without legal authority or failed to perform a purely ministerial act, and that such acts are in contravention of the State Constitution, due to the excessive delays in accepting forensic commitment patients into state facilities. Thus, the trial court should be allowed to hear this case and decide as to whether HHSC's actions are ultra vires and unconstitutional.

HHSC's principal brief also discusses recent efforts made to shorten the forensic commitment patient waitlist and to comply with the requirement to accept

14

forensic commitments into state facilities, in an attempt to show that HHSC is meeting its statutory and constitutional obligations. Brief for Appellants, pp. 7 – 11. While this information might be pertinent, at this stage it can only create a fact issue that precludes granting a plea to the jurisdiction. In fact,

> "In some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder."

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). Furthermore "[i]f the evidence (submitted at the plea to the jurisdiction stage) creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Chambers-Liberty Counties Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). The trial court in this case acted within its discretion in deciding not to dismiss the matter at the pleading stage and to allow the case to proceed for further factual development.

In support of its arguments, HHSC also notes the fact that certain filed bills

15

addressing timely transfer of forensic patients did not pass in the 88th Texas Legislative session. Brief for Appellants, p. 7. However, the fact that these bills did not pass is not a basis for the trial court to have declined to exercise jurisdiction in this case. As noted by the County in its briefing, courts should not attach interpretive significance to failed legislation. Additionally, while courts do occasionally apply the concept of "legislative acquiescence" to infer that the legislature has intentionally decided not to amend a particular law, the concept is not applicable here. The most specific and common type of legislative acquiescence is generally referred to as "legislative acceptance." Legislative acceptance requires the following conditions: (1) the court of last resort (or proper administrative officer) has construed a statute; (2) the statute was ambiguous; and (3) the Legislature has re-enacted the statute without substantial change. If these circumstances exist, the operative presumption is that the Legislature is familiar with the court's interpretation and has adopted it. See, e.g., *Tex. Dep't of Protective and Regulatory Svs. v. Mega Child Care, Inc*., 145 S.W.3d 170, 195-96 (Tex. 2004). In the case at hand, there has been no construction of applicable statutes by the Texas Supreme Court or an administrative agency (in the form of a regulation), and there has not then been a re-enactment of the applicable statutes without substantial change. So, legislative acceptance, or acquiescence, is not applicable to the case at hand and the trial court is not deprived of jurisdiction simply because two of the thousands of unsuccessful

16

bills filed in the 88th Legislature concerned transfer of forensic patients.

Further, TAC urges that the fact that the legislature did not pass more specific provisions addressing transfer of forensic patients weighs in favor of the trial court exercising jurisdiction in this case. It is important that the court be allowed to address the significant and pressing issues raised in this case and to decide whether HHSC is violating statutes and the Constitution by shifting its responsibility to house and treat forensic commitment patients to the counties of this state.[10]

## II. County Jails are Not Intended to be, and are Not Well Equipped to, Serve as De Facto Mental Health Facilities

The extensive waitlist for admission of forensic commitment patients into state hospitals is forcing county jails to serve as de facto mental health facilities for these individuals who are in great need of appropriate mental health services. Often times, county jails are not equipped or staffed to handle the mental health needs of these patients. According to the Texas Commission on Jail Standards, the "waitlist for admission to a state hospital for competency restoration…remains excessively high but has gone down since the last report and currently is at 1,936. This is a burden placed on our county jails that they were never envisioned to fulfill as they operate

---

[10] This is not a case where the court is being asked to direct the Texas Legislature and its decisions on appropriation of funds. Instead, this case is asking the court to decide whether HHSC's activities, and how it allocates and spends appropriated money, complies with its statutory and constitutional responsibilities.

17

as de facto mental health facilities but without the specialized staff or resources to do so successfully."[11]  In March 2023, the Texas Health and Human Services reportedly estimated the average wait time for all forensic admissions is about 323 days.[12]  In May of 2024, the forensic commitment waitlist was reportedly 1,852.[13]

In the real world, these excessive waitlists are forcing county jails into a role they were not meant to play.  Counties are required to provide "safe and suitable jails." Tex. Local Gov't Code, Section 351.001.  However, county jails are not mental health facilities.  See the requirements in Tex. Local Gov't Code, Ch. 351, and specifically section 351.014, placing limitations on holding of "insane persons" in county jails.  Thus, the excessive delays in transferring forensic commitment patients into state hospitals means that these patients may not receive the services they need on a timely basis.  Additionally, and perhaps just as important, this

---

[11] Texas Commission on Jail Standards 2023 Annual Report, p. 22.  2023 Annual Report (state.tx.us).  Also, see Texas Commission on Jail Standards 2022 Annual Report, p. 22; 2022 Annual Report (state.tx.us) ("It was reported last year that the wait list had just exceeded 2,000 inmates with an average wait time approaching one year. The wait list is now over 2,500 and the average wait time exceeds one year. This is a burden placed on our county jails that they were never envisioned to fulfill as they operate as de facto mental health facilities but without the specialized staff or resources to do so successfully.").

[12] Texas Tribune; "Workforce shortages in the state psychiatric hospital system prolong jail time for mentally ill Texans"; March 10, 2023; https://www.texastribune.org/2023/03/10/texas-state-hospitals-mental-health-workforce-shortage/#:~:text=Texas%20Health%20and%20Human%20Services%20have%20estimated%20the%20average%20wait,after%20altercations%20with%20jail%20staff.

[13] KERANews; "He lingered for months in jail. Long waits for Texas mental health beds mean he's not alone"; June 25, 2024; https://www.keranews.org/criminal-justice/2024-06-25/a-texas-man-with-disabilities-lingered-for-months-in-jail-long-wait-times-at-mental-health-facilities-mean-hes-not-alone.

18

situation can place the staff in county jails in both physical and legal jeopardy. One example of this is the fact that counties and county employees often must deal with attempted suicides, and sometimes successful suicides, by jail inmates. When that happens, county officials are often then subjected to civil rights lawsuits arising out of these suicide attempts.

In fact, suicide is the leading cause of death in local jails according to the Bureau of Justice Statistics.[14] In 2019 there were 355 deaths by suicide in local jails.[15] Between 2000 and 2019 there were 6,217 jail suicides, counting for thirty percent of all deaths in local jails.[16] Reuters reached similar conclusions in its own study in 2020. [17] In 2019, the Associated Press reported that of the more than 400 lawsuits filed alleging mistreatment of inmates, around 40 percent involved suicides in local jails with 135 deaths and 30 attempts.[18]

Despite heroic efforts by Texas County Jails, the monetary cost to counties because of the HHSC's failure to house and treat forensic patients is massive, and on its allowed revenue, unsustainable. For example, according to Dallas County, in October 2022 there were 378 individuals awaiting transfers to state facilities for

---

[14] Mortality in Local Jails 2000-2019 – Statistical Tables, Bureau of Justice Statistics, December 2021, NCJ 301368.
[15] Ibid.
[16] Ibid.
[17] https://www.reuters.com/investigates/special-report/usa-jails-privatization/
[18] https://apnews.com/article/ap-top-news-ut-state-wire-ia-state-wire-ca-state-wire-us-news-5a61d556a0a14251bafbeff1c26d5f15

competency restoration. In September of that year, Dallas County cared for 394 such inmates at a cost of $66.17 per inmate per day. However, the cost for this population given the acute needs requires an added expense for treatment and supervision. So Dallas County estimates that in September of 2022, "Dallas County paid up to $5,545,589.40 to maintain care for individuals the State would not accept." [19] Imagine the cost of this burden for all 254 Counties.

By placing Dallas County and other counties in a position where they are required to care for large numbers of forensic commitment patients for unreasonably large periods of time, HHSC is forcing county jails to serve as de facto mental health facilities and placing jail staff and their inmates in jeopardy. This is not what was intended by the legislature.

## III. Texas Counties should be allowed to maintain control over their local facilities.

TAC reiterates and endorses Dallas County's arguments that HHSC is improperly utilizing the facilities and ad valorem tax revenues that rightfully belong to the counties and which are to be used for citizens of the counties. The citizens of Dallas County, and all the other Texas counties, pay their ad valorem taxes to various local governmental entities, including the county, and the citizens of each county

---

[19] Mental Health Letter from Dallas County Commissioners Court, cited in KERA article, "Dallas County sues Texas over wait times for mentally ill inmates;" https://www.keranews.org/criminal-justice/2023-03-24/dallas-county-mental-health-beds-lawsuit.

elect the local Commissioners to then make decisions about use of the ad valorem tax revenues and operation and management of county facilities. The elected Commissioners are then constitutionally empowered to exercise control over county business, including the jails. See TEX. CONST. art. V, § 18. HHSC's actions in allowing forensic commitment patients to remain in county jails in unreasonably large numbers for unreasonably large time frames, is usurping the local control that is, per the Texas Constitution, to be exercised by locally elected officials.

Therefore, inherent in this litigation are questions about the role of the courts to resolve both vertical and horizontal separation of power questions. Amicus curiae recognizes the importance of judicial humility and restraint when confronting questions such as these-- the proper architecture and funding of government. Yet, there are situations when the exercise of such doctrines pushes a court into passivism--rejecting its proper role. We believe the question about whether HHSC has neglected its duty to care for forensic and mental health detainees in state facilities thus forcing local governments to fund housing and care for such detainees is such a case.

## CONCLUSION AND PRAYER

THEREFORE, for the reasons set out above, Amicus Curiae Texas Association of Counties respectfully urge this Court to uphold the trial court's order denying HHSC's Plea to the Jurisdiction.

21

Respectfully submitted,

JACKSON & CARTER, PLLC
6514 McNeil Drive, Bldg. 2, Suite 200
Austin, TX 78729
(512) 473-2002 Telephone
(512) 473-2034 Facsimile

By:___/s/ A. Craig Carter_____
A. Craig Carter
State Bar No. 03908100
ccarter@jackson-carter.com

COUNSEL FOR AMICUS CURIAE

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief of Amicus Curiae was prepared using Microsoft

Word, which indicated that the total word count is 4293 words.

By:___/s/ A. Craig Carter_____
A. Craig Carter

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically on all counsel of record on this the 23rd of April, 2025, in accordance with the Texas Rules of Civil Procedure.

By: _/s/ A. Craig Carter_
A. Craig Carter

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charlotte Holub on behalf of A. Craig Carter
Bar No. 3908100
cholub@jackson-carter.com
Envelope ID: 99987596
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of Amicus Curiae Texas Association of Counties
Status as of 4/23/2025 1:38 PM CST

Associated Case Party: Texas Association of Counties

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Aaron CraigCarter | | ccarter@jackson-carter.com | 4/23/2025 12:36:31 PM | SENT |

Associated Case Party: CecileErwinYoung

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Allison Collins | 24127467 | allison.collins@oag.texas.gov | 4/23/2025 12:36:31 PM | SENT |
| William Wassdorf | 24103022 | will.wassdorf@oag.texas.gov | 4/23/2025 12:36:31 PM | SENT |

Associated Case Party: Dallas County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chad Dunn | 24036507 | chad@brazilanddunn.com | 4/23/2025 12:36:31 PM | SENT |
| Kembel Brazil | 2934050 | scott@brazilanddunn.com | 4/23/2025 12:36:31 PM | SENT |
| Ann Jordan | 790748 | ajordan@carterarnett.com | 4/23/2025 12:36:31 PM | SENT |
| Edgar Carter | 3914300 | lcarter@carterarnett.com | 4/23/2025 12:36:31 PM | SENT |